**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Action No.:  09-CR-00121-MSK

UNITED STATES OF AMERICA,

       Plaintiff,

v.

1. DAVID CHARLES BARTON,

       Defendant.

---

## PLEA AGREEMENT AND STATEMENT OF FACTS
## RELEVANT TO SENTENCING

---

The United States of America (the government), by and through Joseph Mackey, Assistant United States Attorney for the District of Colorado, and the defendant, David Charles Barton, personally and by counsel, Janine Yunker, submit the following Plea Agreement and Statement of Facts Relevant to Sentencing, pursuant to D.C. COLO. LCrR 11.1.

## I.  PLEA AGREEMENT PURSUANT TO RULE 11(c)(1)(B)

The defendant agrees to plead guilty to Count One of the Indictment charging a violation of 18 U.S.C. § 844(e), making a bomb threat by use of a telephone.

(Rev. 04/15/02)



The government agrees: (1) to seek no additional charges based on the facts now known to it; (2) recommend a sentence at the lowest end of the applicable guideline range; and, (3) that the defendant receive the maximum benefit for acceptance of responsibility without further application to the Court.

## II. **ELEMENTS OF THE OFFENSE**

The essential elements of the crime of making a bomb threat by use of a telephone, in violation of 18 U.S.C. § 844(e), are:

1. That the Defendant made, or caused to be made, a threat to kill, injure or intimidate any individual and unlawfully damage or destroy any building, vehicle, and real and personal property by means of an explosive as charged;

2. That the Defendant used, or caused to be used, an instrument in or affecting interstate or foreign commerce, such as a telephone, to communicate the threat;

3. That the Defendant acted knowingly and willfully.

## III. **STATUTORY PENALTIES**

The maximum statutory penalty for a violation of Count One is not more than 10 years imprisonment; not more than a $250,000 fine, or both; not more than 3 years supervised release; $100 special assessment fee.

This conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury.

A violation of the conditions of probation or supervised release may result in a separate prison sentence.

## IV. STIPULATION OF FACTUAL BASIS AND FACTS RELEVANT TO SENTENCING

The parties agree that there is no dispute as to the material elements which establish a factual basis of the offense of conviction.

Pertinent facts are set out below in order to provide a factual basis for the plea and to provide facts which the parties believe are relevant, pursuant to §1B1.3, for computing the appropriate guideline range. To the extent the parties disagree about the facts relevant to sentencing, the statement of facts identifies which facts are known to be in dispute at the time of the plea. (§6B1.4(b))

The statement of facts herein does not preclude either party from presenting and arguing, for sentencing purposes, additional facts or factors not included herein which are relevant to the guideline computation (§1B1.3) or to sentencing in general (§1B1.4). In "determining the factual basis for the sentence, the Court will consider the stipulation [of the parties], together with the results of the presentence investigation, and any other relevant information." (§6B1.4 Comm.)

3

The parties agree that the government's evidence would show that the date

on which conduct relevant to the offense (§ 1B1.3) began is January 21, 2009

The parties agree that the government's evidence would be:

On January 21, 2009, at 1113 hours, the 460th Security Special Forces control

center located at Buckley Air Force base, Colorado, received a telephone call from

303/499-4004. This number listed to a King Soopers grocery store located at 3600

Table Mesa Drive, Boulder, Colorado. The caller stated that his name was David,

that he had a hand held, single wire, Kansas trigger, and that all bombs would

detonate when he was done torturing. The caller did not respond to questions and

hung up shortly after talking. The call resulted in increased security measures at

Buckley AFB including permanent posting of search dogs, increased random

searches of vehicles entering all gates to the base, and additional law enforcement

patrol coverage of the base. These measures impacted the base populace, were

manpower intensive, and continued until the defendant was arrested and the threat

to the base was reassessed.

Officers of the Boulder Police Department responded to the King Soopers

store and contacted witness Troy Chamber. Mr. Chamber said that at approximately

1100 hours on that same date, a male party asked to use the customer service

phone. Shortly after the male used the phone, Mr. Chamber received a phone call

from Buckley Air Force Base stating that some had just called them from King

Soopers and stated he had a bomb and was going to blow up building 8. Several

photos of possible suspects were taken from the surveillance video camera at King Soopers.

The security camera at King Soopers also showed the suspect using a telephone book to look up a number and officers collected that phone book as evidence. The front, back and spine of the phone book was submitted for latent impressions and two latent prints of value were developed. A search through AFIS was made and the prints came back as a match to the defendant.

Boulder police met with Deputy Aldana, jail deputy for Pod C, at the Boulder County Jail where the defendant was housed from December 30, 2008, through January 20, 2009. Deputy Aldana positively identified the defendant as the male in the photos from the surveillance video from King Soopers. Deputy Aldana also listened to the recording of the telephone call containing the threat to Buckley Air Force base and identified the voice on the recording as that of David Barton.

The defendant acted knowingly and willfully in making the telephone bomb threat.

## V.     SENTENCING

Any estimation by the parties regarding the estimated appropriate guideline application does not preclude either party from asking the court to depart from the otherwise appropriate guideline range at sentencing, if that party believes that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not

adequately taken into consideration by the Sentencing Commission in formulating the sentencing guidelines. (§5K2.0).

The parties understand that the court may impose any sentence, up to the statutory maximum, regardless of any guideline range computed, and that the Court is not bound by any position of the parties. (§6B1.4(d)) The Court is free, pursuant to §§6A1.3 and 6B1.4, to reach its own findings of facts and sentencing factors considering the parties' stipulations, the presentence investigation, and any other relevant information. (§6B1.4 Comm.; §1B1.4)

To the extent the parties disagree about the sentencing factors, the computations below identify the factors which are in dispute. (§6B1.4(b)).

The 2008 Edition of the Sentencing Guidelines is applicable to this case.

A.    The base guideline is §2A6.1, with a base offense level of 12.

B.    Specific offense characteristics: pursuant to § 2A6.1(b)(4)(A), a 4-level enhancement applies because the offense resulted in substantial disruption of governmental functions.

C.    There are no victim-related, role-in-offense, obstruction and/or multiple count adjustments which apply.

D.    The adjusted offense level would therefore be 16.

E.    The defendant should receive a 3-level adjustment for acceptance of responsibility. The resulting offense level would therefore be 13.

F.     The parties understand that the defendant's criminal history computation is tentative.  The criminal history category is determined by the Court. Known facts regarding the criminal history are as follows:

1.  A 2001 conviction in Virginia for stalking for which the defendant received 12 months jail, 11 months suspended, 1 year probation. [1 point]

2.  A 2005 conviction in Florida for trespass for which the defendant received 10 days jail. [0 points]

3.  A 2005 conviction in Florida for possession of marijuana/drug paraphernalia for which the defendant received 5 days jail. [1 point]

4.  A 2005 conviction in Florida for trespass for which the defendant received 2 days jail. [0 points]

5.  A 2006 conviction in Florida for assault on firefighter/police; defendant was taken for psychiatric evaluation and adjudication was withheld for 6 months.  He was placed on probation on March 10, 2006; probation was terminated May 25, 2006. [1 point]

6.  A 2007 conviction in Fort Collins for harassment for which the defendant received 45 days jail. [1 point]

7.  A 2008 conviction in Boulder for criminal mischief for which the defendant received 1 year probation, 30 days jail. [0 points because the maximum of 4 one-point convictions has been reached pursuant to U.S.S.G. § 4A1.1(c)]

8. At the time of the instant offense, the defendant was on probation in Boulder. [2 points]

Based on that information, if no other information were discovered, the defendant's criminal history points total 6, placing him in Category III.

G.  Assuming the (tentative) criminal history facts of (F) above, the career offender/criminal livelihood/armed career criminal adjustments would not apply.

H.  The guideline range resulting from the estimated offense level of 13 above, and the (tentative) criminal history category of IV above, is 18-24 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the estimated offense level 13 above could conceivably result in a range from 12 months (bottom of Category I), to 41 months (top of Category VI). The sentence would be limited, in any case, by the statutory maximum.

I.  Pursuant to guideline §5E1.2, assuming the estimated offense level of 13 above, the fine range for this offense would be $3,000 to $30,000, plus applicable interest and penalties.

J.  Pursuant to guideline §5D1.2, if the Court imposes the term of supervised release, that term shall be not more than 3 years.

## VI. <u>WHY THE PROPOSED PLEA DISPOSITION IS APPROPRIATE</u>

The parties believe the proposed plea agreement is appropriate because all relevant conduct is disclosed and the charges to which the defendant has agreed to plead guilty adequately reflect the seriousness of the actual offense behavior.

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings or assurances, express or implied. In entering this agreement, neither the government nor the defendant have relied, or are relying, on any terms, promises, conditions or assurances not expressly stated in this agreement.

Date: 5/18/09 _____
DAVID CHARLES BARTON
Defendant

Date: 5/18/09 _____
JANINE YUNKER
Attorney for Defendant

Date: 6-8-09 _____
JOSEPH MACKEY
Assistant U.S. Attorney